**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:

GRANDPARENTS.COM, INC., *et al.*,

Debtors.

JOSHUA RIZACK, as Liquidating Trustee,

Plaintiff,

STARR INDEMNITY & LIABILITY
COMPANY,

Defendant.

_____/

Case No. 17-14711-LMI
(Jointly Administered)

Chapter 11 Cases

Adv. Proc. No.: 19-01289-LMI

**STARR INDEMNITY & LIABILITY COMPANY'S**
**MOTION TO DISMISS ADVERSARY COMPLAINT**
**FILED BY LIQUIDATING TRUSTEE JOSHUA RIZACK**

Starr Indemnity & Liability Company ("Starr", or the "Defendant"), pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7001, 7008 and 7012(b), by and through its undersigned counsel, files this motion (the "Motion to Dismiss") seeking entry of an order dismissing the Adversary Complaint To Avoid And Recover Fraudulent Transfers, And For Other Relief [ECF No. 1] (the "Complaint") filed by the Plaintiff, Joshua Rizack, as liquidating trustee (the "Trustee" or "Plaintiff") for the Grandparents.com Inc. ("GP.com") and Grand Card LLC ("Grand Card", and together with GP.com, the "Debtors") Liquidating Trust (the "Liquidating Trust"), and in support hereof states as follows:

## INTRODUCTION

1. At the time of contracting with Starr, GP.com was a "start-up" venture desperately in need of capital and credibility. It got both when it convinced Starr to invest substantial sums as a shareholder, and enter into an agreement to provide its advice and services. The contract between the Parties required GP.com to notify Starr as to any issues related to Starr's lack of performance, and provided a period to permit Starr to cure any deficiencies. Glaringly absent from the Complaint is any recitation of GP.com meeting the contract's condition precedent to making a claim against Starr. In essence, GP.com never: (1) provided notice of non-performance as the contract required, or (2) provided Starr with any period to cure an alleged deficiency. In fact, GP.com admittedly received and accepted Starr's services, failed to pay Starr for large portion of its services, and only now, after GP.com fails miserably, is the Trustee claiming that Starr did not provide adequate value for its services. Rewriting history at this juncture to bring money into the Liquidating Trust is unfounded and not supported in the law. More importantly, a trustee in bankruptcy cannot, years later, claim non-performance of contractual obligations, where the party to the agreement being sued on (GP.com) never abided by its notice and cure provisions.

2. The Plaintiff filed the Complaint on July 31, 2019 [ECF No. 1], purporting to seek to avoid certain transfers made by GP.com to Starr (collectively, the "Transfers") as allegedly constructively fraudulent under sections 548(a)(1)(B) and 544 of title 11 of the United States Code (the "Bankruptcy Code") and section 726.106(1) of the Florida Statutes ("Fla. Stat."), and for recovery of the value of such transfers from Starr under section 550 of the Bankruptcy Code and Fla. Stat. sections 726.108 and 729.109.

3.      But, the so-called "transfers" GP.com made were nothing more than GP.com's contractual obligations to pay Starr under the *Strategic Alliance Agreement*, dated as of January 8, 2013, attached to the Complaint as Exhibit A (as amended, the "SAA") - the contract the Trustee is suing on. Yet, as the Complaint makes clear, Starr did indeed provide GP.com with the consulting and other services set forth in section 1 of the SAA (collectively, the "Services"), including, but not limited to, providing introductions to certain insurers, in accordance with the terms of the SAA.

4.      As noted above, however, GP.com's performance under the SAA was not so steadfast. Indeed, GP.com proved a difficult partner, not the least of which troubles were caused by GP.com's management, which, as the Court is surely aware, was at all times inadequate to the task of operating the Debtors' businesses. Nonetheless, Starr continued to perform the Services, even when GP.com failed to meet its payment obligations. The Trustee would have this Court believe that Starr was obligated under the SAA to all but guarantee GP.com's success; in reality, GP.com's failure "to ever generate a profit" was due to myriad issues having nothing at all to do with Starr or its performance under the SAA, which the Trustee himself has admitted.[1]

5.      With the Complaint, the Trustee now attempts to claim that the value of the Services provided by Starr, and readily accepted by GP.com, was not "reasonably equivalent" to

---

[1] *See Declaration of Joshua Rizack in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Bankr. Dkt. No. 4] (citing "significant competition," fluctuations in commissions and membership, and "substantial costs" associated with the legal and financial compliance efforts required by a public company as the reasons GP.com did not "generat[e] meaningful revenue"). The Court may take judicial notice of facts not on the face of a complaint without converting a motion to dismiss into a motion for summary judgment where facts are evidenced in "public records that [are] 'not subject to reasonable dispute' because they [are] 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'" *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (citing Fed. R. Evid. 201(b)); *Koski v. Carrier Corp.*, 374 F. Supp. 3d 1185, 1194 (S.D. Fla. 2017); *see also* Wright & Graham, Federal Practice and Procedure: Evidence § 6337 (1997). "A Court may take judicial notice of its own records, and of public records within its own files." *Hurd v. Durrand*, No. 12-20899-CIV, 2013 WL 1192351, *7 n.8 (S.D. Fla. Jan. 24, 2013) (citing *Cash Inn of Dade, Inc. v. Metro. Dade Cty.*, 938 F.2d 1239, 1243 (11th Cir. 1991); *ITT Rayonier, Inc. v. United States*, 651 F.2d 343, 345 n.2 (5th Cir. 1981) ("A court may, however, take judicial notice of its own records or those of inferior courts.").

3

the consulting fees paid by GP.com. In other words, the Trustee is challenging Starr's performance under the SAA and alleging that such performance was not equivalent to the monies paid by GP.com. This differs from a typical fraudulent transfer case in which a trustee alleges that an asset was sold for less than its fair value: in that scenario, property leaves the estate in exchange for new property, and the trustee alleges that what the debtor gave up is grossly disparate in value to what the debtor received.[2] Here, however, the focus of the Trustee's claims is on the value of the services provided by Starr to GP.com and the price paid for those services, a claim that is not at all supported by the threadbare allegations in the Complaint.

6.      At this stage of the proceedings however, it is sufficient, and indeed Starr will show, that the Complaint fails to state a claim upon which relief may be granted.[3] The allegations in the Complaint are wholly inadequate as a matter of law to support the claims asserted against Starr, and the contract being sued upon has a legal bar to the substance of the claims being brought. The Court should recognize this ploy for what it is: an attempt to bring a common breach of contract claim as a fraudulent transfer. There is no support for a trustee ignoring the contractual requirement of notice and cure and substituting his opinion as to the adequacy of services for the entity that received them, and in any event the Trustee fails to plead sufficient facts to support his claims, and thus the Complaint should be dismissed in its entirety.

## MEMORANDUM OF LAW

### A.      *Legal Standard for Motion to Dismiss.*

7.      The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim" that shows that the pleader is entitled to relief. *See* Fed. R. Civ. P.

---

[2] *See* Jack F. Williams, *The Fallacies of Contemporary Fraudulent Transfer Models As Applied to Intercorporate Guaranties: Fraudulent Transfer Law As A Fuzzy System*, 15 Cardozo L. Rev. 1403, 1423 (1994).

[3] Starr is confident that the evidence in this case will ultimately show that Starr did in fact provide services of reasonably equivalent value for the payments it was entitled to under the SAA.

4

8(a)(2). In order to survive a motion to dismiss, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face" on the assumption that all the allegations in the complaint are true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 n. 43 (11th Cir. 2008). A plaintiff, therefore, must allege sufficient facts in order to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Whether a claim for relief is plausible is a "context-specific task" requiring the Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

8.      As the Eleventh Circuit noted in *American Dental Association*, the Supreme Court suggested that courts considering motions to dismiss adopt a "two-pronged approach" in applying these principles, first eliminating any allegations in the complaint that are merely legal conclusions, and second, where there are well-pleaded factual allegations, "assum[ing] their veracity and then determin[ing] whether they plausibly give rise to an entitlement to relief." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

**B.**     ***Count I Fails to State a Claim Under 11 U.S.C. § 548(a)(1)(B).***

**(i)  The Complaint Does Not State a Plausible Claim that GP.com Did Not Receive Reasonably Equivalent Value for the Transfers.**

9.      The Trustee fails to adequately plead that the partial payments for Starr's services under the SAA, constitute fraudulent transfers under section 548 of the Bankruptcy Code on a theory of constructive fraud. To proceed under section 548(a)(1)(B) of the Bankruptcy Code, a plaintiff must plausibly plead, in relevant part, that the debtor, in exchange for the challenged transfer(s), "received less than a reasonably equivalent value." 11 U.S.C. § 548(a)(1)(B).[4] The

---

[4] 11 U.S.C. § 548(a)(1)(B) provides that a "trustee may avoid any transfer…of an interest of the debtor in property…that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily":

5

concept of reasonably equivalent value does not require a dollar-for-dollar exchange. *See In re Northlake Foods, Inc.*, 715 F.3d 1251, 1257 (11th Cir. 2013). Rather, the value received needs only be "reasonably equivalent" in value to what was transferred. *See* 11 U.S.C. § 548(a)(1)(B).

10. Here, the Complaint fails to plead a lack of "reasonably equivalent value" with the requisite particularity to satisfy the *Twombly* and *Iqbal* pleading standards. The only facts alleged in the Complaint to support the Trustee's claim of a lack of reasonably equivalent value are as follows: 1. A conclusion by the Trustee that Starr failed to properly perform as agreed under the SAA; 2. Another conclusion that Starr was ultimately incapable of providing reasonably equivalent value because, inter alia, it failed to provide the Services; 3. Starr primarily only provided one person to perform the Services, who proceeded in a "passive and reactionary manner"; 4. Another conclusion, that the terms of the relationship Starr negotiated between GP.com and Aetna Life Insurance Company were unfavorable to GP.com; and 5. A conclusion that Starr failed to adequately assist GP.com in negotiating and obtaining relationships with other insurance carriers. *See* Complaint, ¶¶ 27-31. The majority of the "allegations" are merely opinions and conclusions of the Trustee and bear no weight as factual support for his claim. All of these allegations amount to an invented claim that Starr did not perform under the contract.

---

(i)      received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)      (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11.     These threadbare facts are insufficient to state a claim that the payments to Starr were not supported by reasonably equivalent value. As noted above, the Services are set forth in section 1 of the SAA include a non-exhaustive list of "business consulting services" to be provided by Starr to GP.com.[5] Leaving aside the Trustee's conclusory statements regarding Starr's alleged "failure…to perform as agreed," the remaining facts, even accepted as true, do not plausibly lead to the conclusion that all the remaining services provided by Starr were not of a value reasonably equivalent to the Transfers. Indeed, nowhere in the Complaint does the Trustee allege that Services were not provided; the Trustee now questions only the *value* of such Services to GP.com's business. But "allegedly poor…performance" does not state a plausible claim for fraudulent transfer. *See Tow v. Bulmahn*, 565 B.R. 361, 366 (E.D. La. 2017). The question of whether a debtor obtained "reasonably equivalent value" is determined from a reasonable creditor's perspective at the time of the exchange, without regard to subjective needs or perspectives and without the "wisdom" of hindsight. *See In re PSN USA, Inc.*, 615 F. App'x 925, 932 (11th Cir. 2015); *Janvey v. Golf Channel, Inc.,* 487 S.W.3d 560, 582 (Tex. 2016) (applying Texas's version of the Uniform Fraudulent Transfer Act).

12.     For example, the Trustee's allegations that GP.com's relationship with Aetna involved "too limited" a suite of insurance products and "too small" a share of resulting

---

[5] The Services as actually provided in the SAA are stated differently than as set forth in the Complaint. For instance, the SAA does not provide that Starr was obligated to "develop a comprehensive business plan for Grandparents.com" or the "negotiation of favorable agreements with insurance carriers," but rather that Starr would *assist* GP.com in the development of its business plan and the negotiation of such agreements. Starr's purported obligation to "develop[]…strategic business and investment relationships in connection with the development of Grandparents.com" is a recital to the SAA, which are not incorporated into the body of the agreement by its express terms. Rule 10(c) of the Federal Rules of Civil Procedure, as incorporated by Rule 7010 of the Federal Rules of Bankruptcy Procedure, states that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Where a document is attached to the Complaint (or should be) and conflicts with the allegations in the Complaint, the document must control. *Franz Tractor v. J.I. Case Co.*, 556 So. 2d 524, (Fla. 2d DCA 1990); *Harry Pepper v Lasseter*, 247 So 2d 736 (Fla. 3d DCA 1971); *Republic of Ecuador v. Chevrontexaco Corp.*, 376 F. Supp. 2d 334, 375 (S.D.N.Y. 2005) (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

commissions do nothing to support a conclusion that the Services provided by Starr were not of "reasonably equivalent value" at the time they were provided; the fact that the Aetna relationship did not prove favorable for GP.com does not now make the payments to Starr constructively fraudulent, especially in light of the obvious ineptitude of GP.com. *See In re PSN USA, Inc.*, 615 F. App'x at 932 (determination of value should focus on the value of the goods and services provided rather than on the impact that the goods and services had on the bankrupt enterprise). Moreover, the contract clearly deals with introductions to insurance carriers, not a guarantee by Starr that the products and services of a carrier (like Aetna) will be viewed after the fact as not adequate.

13.    Moreover, it is clear from the Complaint, the SAA, and Starr's proof of claim that that GP.com did not pay the full charges it was required to pay under the contract. Not only did GP.com fail to pay its bills to Starr, it also converted large portions of the money owing to Starr to worthless warrants.[6] *See* Complaint, ¶ 33(j); Complaint, Exhibit B, ¶ 2. The Trustee has failed to plead facts that support the proposition that the services Starr provided over the entire course of the parties' relationship were somehow inadequate compared to the vastly reduced amounts actually paid to Starr for the Services,[7] particularly considering that Starr continued performing *without compensation* for the lengthy periods between payments from GP.com even when it was

---

[6] GP.com's failure to pay in accordance with the agreed-upon terms of the SAA is evident from the parties' agreement to vary those terms on multiple occasions, which resulted from accord and satisfaction. *See* First Amendment to the SAA (Complaint, Exhibit B, ¶ 2); Complaint, ¶ 33(j) (payments made by GP.com using proceeds from an equity investment by Starr); Complaint, Exhibit D (letter agreement evidencing varied payment obligations "until the parties mutually agree on payment"). "An accord and satisfaction results when: (1) the parties mutually intend to effect a settlement of an existing dispute by entering into a superseding agreement; and (2) there is actual performance in accordance with the new agreement." *Martinez v. S. Bayshore Tower, L.L.L.P.*, 979 So. 2d 1023, 1024 (Fla. 3d DCA 2008). Yet, through this action, the Trustee is attempting to revisit the settlements reached between sophisticated parties.

[7] Under the terms of the SAA as originally agreed-to by the parties, Starr was entitled to payments totaling nearly $3 million over the life of Starr's performance under the SAA. The Trustee would now have this Court believe that the Services rendered by Starr were not reasonably equivalent to the roughly $2.1 million that GP.com actually paid for them, which is significantly less than the value Starr provided based on the terms of the SAA as negotiated by the two sophisticated parties to that agreement.

under no obligation to do so. *See* Complaint, ¶ 33; *Barbagallo v. Marcum LLP*, 925 F. Supp. 2d 275, 287 (E.D.N.Y. 2013), *aff'd*, 552 F. App'x 102 (2d Cir. 2014) ("It is a 'fundamental principle of contract law that...the material breach of a contract by one party discharges the contractual obligations of the non-breaching party.'").

14.     Since the fraudulent transfer claims in the Complaint are not supported by the deficient factual allegations and threadbare legal conclusions made by the Trustee, the Complaint fails to satisfy the pleading standards required by *Iqbal* and *Twombly* as to Count I, which accordingly should be dismissed.

### (ii)   The Trustee's Constructive Fraudulent Transfer Claims Are in Reality Claims for Breach of Contract, and Accordingly Should be Dismissed.

15.     The Trustee's attempt to turn a garden variety breach of contract claim into a "constructive fraud" should be rejected entirely. Even if the Trustee now asserts that GP.com "paid too much" for the services contemplated in the SAA, that is a matter that should have been dealt with by GP.com under the contract terms binding the parties. GP.com made no such claim, and all of Starr's Services were performed and accepted. In an analogous context, the law clearly states that the acceptance of services negates one's ability to later claim "unjust enrichment" of the party providing the services. *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1332 (M.D. Fla. 2015); *The Real Estate Value Co. Inc. v Carnival Corp.*, 92 So. 3d 255, 263 (Fla. 3d DCA 2012); *N.G.L. Travel Assocs. v Celebrity Cruises Inc.*, 764 So.2d 672, 675 (Fla. 3d DCA 2000) ("In terms of the course of dealing between the parties, there is no dispute that NGL knew precisely what commission rate it would earn per cruise booking, that the commission paid was on the cruise fare exclusive of port charges, and the travel agency agreed to accept that amount as payment for the service provided. The travel agency received exactly what it bargained for.

9

Unjust enrichment 'cannot exist where payment has been made for the benefit conferred.'" (citing *Gene B. Glick Co. v. Sunshine Ready Concrete Co.*, 651 So.2d 190 (Fla. 4th DCA 1995)).

16.    In addition, the contract between Starr and BP.com has a "notice and cure" provision that requires notice of non-performance in writing and an opportunity to cure. *See* SAA, ¶ 2. The parties to the Agreement bargained for a process to deal with any alleged lack of performance. The Agreement states: "…each party shall have the right to terminate this Agreement, at any time, upon a material breach of this Agreement by the other party or non-performance of this Agreement by the other party of any such party's obligations set forth herein, including without limitation, non-performance of the services contemplated hereby or non-payment of the fees hereunder, upon thirty (30) days' prior written notice to the other party." The party who was provided such written notice was then given 60 days to cure. As is common with respect to parties who bargain for notice and cure, a party cannot sit back and "accumulate" damages by failing to put the other party on notice. If, for instance, GP.com believed that Starr was not performing in the first month of the Agreement, GP.com was duty-bound to provide written notice, an opportunity to cure, and if Starr did not cure, terminate the Agreement. A party bound by such a condition precedent cannot sit on its rights and allow "damages'" to accumulate for years and then spring it on the other party.  *See Custom Built Homes by Ed Harris v. McNamara*, 2006 WL 3613583, at *5 (Tenn. Ct. App. Dec. 11, 2006) ("Requiring notice and a reasonable opportunity to cure defects in the performance of a contract is a sound principle.  It is designed to allow the defaulting party the opportunity to repair the defective work, to reduce the damages, to avoid additional defective performance, and to promote the informal settlement of disputes."); *McClain v. Kimbrough Const. Co., Inc.*, 806 S.W.2d 194, 198 (Tenn. Ct. App. 1990) (same); *Great W. Press, Inc. v. Atlanta Film Converting Co.*, 479 S.E.2d 143, 145 (Ga. Ct. App.

10

1996) (same); *Pollard v. Saxe & Yolles Dev. Co.*, 12 Cal. 3d 374, 380 (Cal. 1974) (same).  The Trustee's claims that the Services provided by Starr were somehow inadequate and that Starr failed to perform to justify the monies paid, should have been made by the company claiming a breach of the SAA, with notice to Starr and an opportunity to cure – as opposed to the Trustee's "after-the-fact" claims, which provide zero opportunity to cure. A "notice and cure" provision is intended to prevent exactly what the Trustee is attempting.

17.    The notice and cure provision is a condition precedent to bringing a claim for failure to perform under a contract (which the Trustee characterizes as not providing equivalent value).  If a condition precedent is explicitly stated in a contract, that condition must be satisfied before litigation on that issue may commence. *3-J Hospitality, LLC v. Big Time Design, Inc.*, No. 09-61077-CIV, 2009 WL 3586830, at *2 (S.D. Fla. Oct. 27, 2009) ("Plaintiff has failed to satisfy a condition precedent to litigation and the complaint must be dismissed."); *MCC Dev. Corp. v. Perla*, 916 N.Y.S.2d 102, 103 (1st Dep't 2011) (affirming dismissal in construction dispute because plaintiff failed to satisfy conditions precedent of referral to architect prior to commencing litigation); *Goldman v. State Farm Fire Gen. Ins. Co.*, 660 So. 2d 300, 306 (Fla. 4th DCA 1995) (holding that noncompliance with a condition precedent precludes an action on the contract regardless of a showing of prejudice); *see also Ferrer v. Fidelity & Guar. Ins. Co.*, 10 F. Supp. 2d 1324, 1326 (S.D. Fla. 1998) (granting summary judgment because plaintiff failed to comply with the conditions precedent to instituting the action); *Ocean Partners, LLC v. North River Ins. Co.*, 810 N.Y.S.2d 430, 431 (1st Dep't 2006) (affirming judgment for defendant because plaintiff failed to satisfy condition precedent of providing written notice of claim for coverage under insurance policy).

11

18.     The mere act of filing for Chapter 11 protection cannot, and does not, transform a contract claim into a plausible claim of constructive fraudulent transfer, and does nothing to vary the agreement between the parties. *See, e.g.*, *In re Lauderdale Motorcar Corp.*, 35 B.R. 544, 549 (Bankr. S.D. Fla. 1983) (Bankruptcy court "cannot…rewrite the terms of a contract"). And it cannot be the case that a party to a contract with a notice and cure provision may fail to provide notice and an opportunity to cure, only to later claim that its counterparty's performance was insufficient. *See Soft Stuff Distribs. Inc. v. Ryder Truck Rental*, No. CCB-11-2605, 2012 WL 3111679, at *6-7 (D. Md. July 30, 2012).  Indeed, when a contract claim contains a pre-suit notice and cure provision, providing the requisite notice and opportunity to cure is a condition precedent to bringing suit on that contract. *Huete v. Bank of N.Y. Mellon*, No. 17-CV-20371, 2017 WL 1499241, at *2 (S.D. Fla. Apr. 25, 2017) (granting defendant's motion to dismiss because plaintiff failed to provide pre-suit notice and opportunity to cure); *Trevathan v. Select Portfolio Servicing, Inc.*, 142 F. Supp. 3d 1281, 1291 (S.D. Fla. 2015) (same); *see also Wroblewski v. Am. Home Mortg. Servicing, Inc.*, 68 So. 3d 431, 432 (Fla. 5th DCA 2011) (reversing trial court's grant of summary judgment because the "[a]ppellee failed to comply with the condition precedent . . . requiring notice and opportunity to cure").

19.     The failure to comply with the notice and cure provisions of a written agreement bars a party from pursuing any claim based on the contract. *See Pry Corp. v. Leach*, 177 Cal. App. 2d 632, 639 (1960) (holding that "a party complaining of the breach of a contract is not entitled to recover therefore unless he has fulfilled his obligations."). For instance, in *De La Falaise v. Gaumont-British Picture Corp.*, 103 P. 2d 447, 451 (Cal. App. 2d 1940), the plaintiff sued for breach of a contract under which she was to render services as a motion picture actor. The court held that the cause of action was one for breach of contract on the part of the

12

respondent, Gaumont-British Picture Corporation ("Gaumont"), resulting from its failure to perform a condition precedent, i.e., the giving of timely notice as to the starting date of a picture. *Id.* at 468. Before it could place the appellant, De La Falaise, in default, it was necessary for Gaumont to give notice as provided in the contract. *Id.* Gaumont was required to strictly adhere to the contracts' notice and cure provisions in order to pursue any claim against De La Falaise. *Id.; see also Huete*, 2017 WL 1499241, at *2; *Trevathan*, 142 F. Supp. 3d at 1291; *Sauer v. Xerox Corp.*, 17 F. Supp. 2d 193, 197 (W.D.N.Y. 1998) ("Where, as here, the parties have agreed to provide notice and an opportunity to cure prior to suing for performance or asserting termination rights, those covenants must be adhered to. A party's failure to do so renders ineffective that party's rights to pursue those other remedies.").

20. The Trustee should not be allowed to bring an ordinary breach of contract claim after the fact, under the guise of a constructive fraudulent transfer action, where GP.com never abided by the notice and cure provision of the agreement. Accordingly, the Complaint should be dismissed.

### (iii) The Trustee's "Constructive Fraudulent Transfer" Claims Are Barred by the Independent Tort Doctrine.

21. The Trustee's "fraudulent transfer" claim is also barred by the independent tort doctrine. Courts have held that "fraudulent transfer actions" sound in tort. *See In re Int'l Mgmt. Assocs., LLC*, 495 B.R. 96, 105–06 (Bankr. N.D. Ga. 2013) ("More generally, it is significant that a fraudulent transfer action seeks to set aside a transfer notwithstanding its validity as a matter of contract. The noncontractual nature of a fraudulent transfer action makes it closely analogous to a tort, which is an unlawful violation of a private legal right other than a mere breach of contract, express or implied. In substance and effect, the purpose of a fraudulent transfer claim is to determine whether the debtor's actions amounted to a fraud on a creditor,

allowing it to recover property notwithstanding its transfer. This focus on the improper and fraudulent character of the debtor's conduct and the injury caused to [its] creditors places these claims most appropriately in tort law.") (internal citations omitted); *see also In re Cyrus II P'ship*, 413 B.R. 609, 619 (Bankr. S.D. Tex. 2008) ("As such, avoidance actions under § 544(b) are appropriately characterized as tort actions.").

22.     The Trustee's claim relies on the terms of the contract between the parties, which is the classic example under Florida law of a claim that is barred by the independent tort doctrine. *Detwiler v. Bank of Cent. Fla.*, 736 So. 2d 757, 759 (Fla. 5th DCA 1999); *Action Nissan Inc. v. Hyundai Motor Am.*, 617 F. Supp. 2d 1177, 1193 (M.D. Fla. 2008); *Royal Surplus Lines Ins. Co. v. Coachman Indus., Inc.*, 184 F. App'x 894, 902 (11th Cir. 2006)   The independent tort doctrine's applicability to the Trustee's claim is also supported by the Florida Supreme Court's rulings in *Moransis v. Heathman* and *Indemnity Insurance Co. v. American Aviation, Inc.*, in which the Florida Supreme Court held that a party in contractual privity with another cannot seek to recover in tort for damages arising out of a contract. *Moransis v. Heathman*, 744 So. 2d 973, 983 (Fla. 1999); *see also Indemnity Ins. Co. v. Am. Aviation, Inc.*, 891 So. 2d 532 (Fla. 2004).

23.     Even in light of *Tiara Condominium Association, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So.3d 399 (Fla. 2013) ("*Tiara*"), where the Florida Supreme Court narrowed the economic loss doctrine, the court explained, "the economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Id.* at 401 (citation omitted). A tort can only be alleged that is beyond and independent of the breach of contract claim. *See Tiara*, 110 So.3d at 408

14

(Pariente, J., concurring) (quoting *Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.*, 482 So.2d 518, 519 (Fla. Dist. Ct. App. 1986)). As Justice Pariente explained in her concurrence in Tiara:

> Our decision is neither a monumental upsetting of Florida law nor an expansion of tort law at the expense of contract principles. To the contrary, the majority merely clarifies that the economic loss rule was always intended to apply only to products liability cases....The majority's conclusion that the economic loss rule is limited to the products liability context does not undermine Florida's contract law or provide for an expansion in viable tort claims. Basic common law principles already restrict the remedies available to parties who have specifically negotiated for those remedies, and...our clarification of the economic loss rule's applicability does nothing to alter these common law concepts. For example, in order to bring a valid tort claim, a party still must demonstrate that all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim.

*Tiara*, 110 So. 3d at 408-09 (Pariente, J., concurring).

24. In the wake of *Tiara*, the Eleventh Circuit noted that a separate tort can be brought only if a breach of contract is combined with some other conduct amounting to an independent tort. *Lamm v. State St. Bank & Trust*, 749 F.3d 938, 947 (11th Cir. 2014) (quoting *U.S. Fire Ins. Co. v. ADT Sec. Servs., Inc.*, 134 So. 3d 477, 480 (Fla. 2d DCA 2013)).

25. Courts in this District have consistently followed the interpretation of *Tiara* suggested by the Eleventh Circuit in *Lamm*. *See, e.g.*, *Burdick v. Bank of Am., N.A.*, 99 F. Supp. 3d 1372, 1378 (S.D. Fla. 2015) ("[T]he alleged duty [element of a negligence claim] cannot stem from a contractual relationship between the parties....To bring a negligence claim under Florida law, a party must demonstrate that 'the tort is independent of any breach of contract claim.'") (quoting *Tiara*, 110 So. 3d at 408 (Pariente, J., concurring)); *Kaye v. Ingenio, Filale de Loto-Que., Inc.*, No. 13-61687-CIV, 2014 WL 2215770, at *4 (S.D. Fla. May 29, 2014) ("[T]o set forth a claim in tort between parties in contractual privity, a party must allege action beyond and independent of breach of contract that amounts to an independent

15

tort"); *Altenel, Inc. v. Millennium Partners, L.L.C.*, 947 F. Supp. 2d 1357, 1369 (S.D. Fla. 2013); *Callaway Marin Techs., Inc. v. Tetra Tech, Inc.*, No. 16-CV-20855, 2016 WL 7407769, at *3 (S.D. Fla. Dec. 22, 2016).

26.    "Generally, an action in tort arising out of a breach of contract by a defendant involves a separate and distinct duty imposed by law for the benefit of the plaintiff and allows the plaintiff to maintain an action without regard to whether a contractual relationship exist[s] between the two." *S. Wind Aviation, LLC v. Cessna Aircraft Co.*, No. 12-CV-1376, 2014 WL 12570958, at *5 (M.D. Fla. July 15, 2014) (citing *Miller v. Allstate Ins. Co.*, 573 So. 2d 24, 27 (Fla. 3d DCA 1990)).  A review of the Complaint here does not show any independent duties not imposed by the SAA. Indeed, the Trustee's claims are entirely about Defendant's actions or inactions taken with respect to the SAA and how those actions and inactions were not performed adequately. Accordingly, the Trustee's claims should be barred by the independent tort doctrine. *Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, No. 05-60080-CIV, 2008 WL 926513, at *3 (S.D. Fla. Mar. 31, 2008).

27.    When, as here, a contract has been breached, a tort action lies only for acts independent of those acts establishing the contract's breach.  *Temurian v. Piccolo*, No. 18-CV-62737, 2019 WL 1763022, at *7-8 (S.D. Fla. Apr. 22, 2019) ("Fundamental contractual principles continue to bar a tort claim where the offending party has committed no breach of duty independent of its contractual obligations."); *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 494 (Fla. 3d DCA 1994) ("It is well established that breach of contractual terms may not form the basis for a claim in tort. Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in

16

tort."). The actions alleged by the Trustee have not converted his claim for breach of contract into a claim sounding in tort.

28.    There is nothing in the Complaint indicating that GP.com suffered any distinct damages separate and apart from the damages it purportedly suffered as a result of Starr's alleged failure to perform under its contract with GP.com. The parties' contractual obligations – and whether Starr performed the obligations of the contract – are based on the language of the contract between GP.com and Starr. Florida law does not allow a party damaged by a breach of contract to recover the exact same damages via a fraud claim. *Ghodrati v. Miami Paneling Corp.*, 770 So. 2d 181, 183 (Fla. 3d DCA 2000) ("A plaintiff may not recover damages for fraud that duplicate damages awarded for breach of contract."); *see also Novak v. Gray*, 469 F. App'x 811, 818 (11th Cir. 2012) ("A fraudulent damages award that duplicates the plaintiff's breach of contract damages cannot stand.").

29.    *Tiara* does not change the principle that basic common law principles already restrict the remedies available to parties who have specifically negotiated for those remedies. The Florida Supreme Court's clarification of the economic loss rule's applicability does nothing to alter these common law concepts. That opinion did not change the "independent tort" doctrine. For example, in order to bring a valid tort claim, a party still must demonstrate that all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim. *See Eiber Radiology v. Toshiba Am. Med. Sys., Inc.*, No. 14-23299-CIV, 2015 WL 13203447, at *2 (S.D. Fla. Aug. 27, 2015) ("Plaintiff's claim is merely an attempt to recast a breach of a contractual relationship as a claim in tort.  Further, as a breach of a contractual relationship cannot constitute an action in tort, Plaintiff's claim must be dismissed."); *Lewis v. Guthartz*, 428 So. 2d 222, 224 (Fla. 1982) (holding that there must be a tort

17

"distinguishable from or independent of [the] breach of contract" in order for a party to bring a valid claim in tort based on a breach in a contractual relationship); *Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.*, 482 So. 2d 518, 519 (Fla. 3d DCA 1986) ("[A] breach of contract, alone, cannot constitute a cause of action in tort . . . . It is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence.") (citations omitted).  Accordingly, the Plaintiff has failed to allege a cause of action for constructively fraudulent transfers independent of its breach of contract claim. *See Freeman v. Sharpe Res. Corp.*, No. 6:12-CV-1584, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013) (stating that "[a] plaintiff will not succeed merely by labeling a breach of contract claim 'fraud in the inducement;' rather, the alleged fraud must be separate from the performance of the contract."); *Monsoon Inc. v Bizjet Int'l Sales & Support Inc.*, No. 16-80722-CIV, 2017 WL 747555, at *9  (S.D. Fla. Feb 27, 2017).

30.    Federal district courts within Florida have cited Justice Pariente's statements in *Tiara*  to support the contention that in order to bring a valid tort claim, the party must still show that the tort is independent of any breach of contract claim. *See Freeman v. Sharpe Res. Corp.*, No. 12-CV-1584, 2013 WL 2151723, at *7-8 (M.D. Fla. May 16, 2013); *Joyeria Paris, SRL v. Gus & Eric Custom Servs., Inc.*, No. 13-22214-CIV, 2013 WL 6633175, at *3-4 (S.D. Fla. Dec. 17, 2013); *S. Wind Aviation, LLC v. Cessna Aircraft Co.*, No. 12-CV-1376, 2014 WL 12570958, at *5 (M.D. Fla. July 15, 2014); *Peebles v. Puig*, 223 So. 3d 1065, 1068 (Fla. 3d DCA 2017); *Goldson v. KB Home*, No. 17-CV-340, 2017 WL 1038065, at *3 (M.D. Fla. Mar. 17, 2017).

31.    The Trustee is alleging a tort claim (i.e., fraudulent transfer) and that claim is not independent of a breach of contract claim. Recent cases have applied the independent tort doctrine to bar tort claims when there is no tort independent of a breach of contract.  *Lookout*

*Mountain Wild Animal Park, Inc. v. Stearns Zoological Rescue & Rehab Center, Inc.*, 553 F. App'x. 864 (11th Cir. 2014) ("We cannot conclude that the district court erred in granting judgment as a matter of law in favor of defendants with respect to plaintiff's tort claims…we readily conclude that there is no evidence of a pre-contractual misrepresentation."); *Lamm v. State Street Bank and Trust*, 749 F.3d 938, 947 (11th Cir. 2014) ("[T]he standard appears to be that 'where the breach of contract is combined with some other conduct amounting to an independent tort, the breach can be considered negligence.'"); *Burdick v. Bank of Am., N.A.*, 99 F. Supp. 3d 1372, 1378 (S.D. Fla. 2015) ("Importantly, however, the alleged duty cannot stem from a contractual relationship between the parties. 'It is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such a breach can constitute negligence.'").

32. In short, *Tiara* does not expressly overrule the independent tort doctrine. Decades of precedent had acted to confuse the independent tort doctrine and the economic loss doctrine. The confusion was so prevalent that some Courts even held that the doctrines were synonymous. However, Justice Pariente's concurrence clearly asserts the independent tort doctrine is alive and well, as do the cases following her holding. This concept has been adopted in federal courts. This makes sense, as the independent tort doctrine predates the economic loss rule and *Tiara* does not expressly overrule the earlier-adopted doctrine. Furthermore, the Eleventh Circuit has applied the independent tort doctrine to bar tort claims since *Tiara* and the Federal District Courts have also applied the doctrine to bar tort claims.

33. Because the Trustee's claims are barred by the independent tort doctrine, the Complaint should be dismissed.

19

**C.**      *Count II Fails to State a Claim Under 11 U.S.C. § 544 and Fla. Stat. § 726.106(1).*

34.      The fraudulent transfer claims under section 544(b) of the Bankruptcy Code must be dismissed for all the reasons stated above and because (i) the Trustee has failed to plausibly plead a lack of "reasonably equivalent value" in return for the Transfers, as set forth more fully above (*see supra* ¶¶ 9-14); (ii) the Trustee's claims are barred by applicable law, as set forth more fully above (*see supra* ¶¶ 15-33); and (iii) the Complaint does not identify a particular "triggering creditor" that would confer the Trustee standing to bring its claims under Section 544 of the Bankruptcy Code and Fla. Stat. 726.106(1). *See In re Tabor*, No. 14-20731-EPK, 2016 WL 3462100, at *2 (Bankr. S.D. Fla. June 16, 2016) ("Absent a qualifying (sometimes called a 'triggering') creditor, the Plaintiff may not use § 544(b) to avoid the Transfer."). Under section 544(b), a trustee is authorized to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim[.]" *See* 11 U.S.C. § 544(b)(1).[8] To invoke section 544(b), the plaintiff bears the burden to demonstrate: (i) the existence of an actual creditor; (ii) with an allowable claim; (iii) who under non-bankruptcy law could avoid a particular transfer, at least in part. 11 U.S.C. § 544(b); *see In re Aqua Clear Techs., Inc.*, 361 B.R. 567, 583 (Bankr. S.D. Fla. 2007); *see also In re APCO Merchant Services, Inc.*, 585 B.R. 306, 314-16 (Bankr. E.D.N.Y. 2018) (collecting cases). It is not sufficient to allege generally that a triggering creditor exists; the plaintiff must identify by name at least one creditor with an allowable unsecured claim that could have sought avoidance of the transfer in question. *See In re Rollaguard Security, LLC*, 570 B.R. 859, 881 (Bankr. S.D. Fla. 2017).

---

[8] Here, the "applicable law" invoked by the Trustee is Fla. Stat. section 726.106, which provides that a transfer is fraudulent as to *present creditors* when such transfer was made if the debtor (i) made the transfer or without receiving a reasonably equivalent value in exchange for the transfer, and (ii) was insolvent at that time or the debtor became insolvent as a result. Fla. Stat. § 726.106.

35.     In the Complaint, the Trustee alleges as follows: "Based upon Grandparents.com's financial records showing greater liabilities than assets, it is clear Grandparents.com had at least one creditor at all relevant periods who could have avoided the Transfers." Complaint, ¶ 52.  It is of course not clear at all that there was at least one creditor at all relevant periods who could have avoided the Transfers, as the Trustee makes only vague, conclusory reference to such creditor's existence, with no attempt to identify any individual or entity with the requisite particularity to survive a motion to dismiss his claims under § 544 and the Fla. Stat. This pleading deficiency alone mandates dismissal of Count II. *See Rollaguard*, 570 B.R. at 881-82 ("The Trustee must identify by name at least one creditor with an allowable unsecured claim that could have sought avoidance of the transfer in question under Florida law.").

36.     Moreover, the Transfers were payments (when GP.com made them) for services rendered and accepted over the course of nearly three years. The Trustee's threadbare allegation that a creditor existed "at all relevant periods" is far from sufficient to plead that an unsecured creditor existed at the time of each transfer such that the Transfers are avoidable pursuant to section 544(b).

**D.**     ***Count III Fails to State a Claim for Recovery of the Transfers from Starr and Should Be Dismissed.***

37.     Because the Trustee has not adequately plead a lack of reasonably equivalent value and has not shown the avoidability of the Transfers, the Trustee has likewise failed to state a claim for recovery of the Transfers under 11 U.S.C. § 550 and Fla. Stat. §§ 726.108, 726.109. In particular, Fla. Stat. § 726.108 provides that a creditor seeking to recover an avoidable transfer may do so only "to the extent necessary to satisfy the creditor's claim." As noted above, the Trustee has failed to plead the existence of a particular triggering creditor that could have

21

avoided the Transfers (if indeed they were avoidable at all), and likewise fails to state any facts as to the amount of such triggering creditor's claim for the purposes of showing the extent to which the Transfers would be recoverable. Thus, Count III must be dismissed for failure to state a claim.

E.      ***Count IV Fails to State a Claim for Disallowance of Starr's Claim in GP.com's Bankruptcy.***

38.     The Trustee has not plead sufficient facts to state a claim for disallowance of Starr's filed proof of claim in GP.com's bankruptcy. A proof of claim that is filed in accordance with the Bankruptcy Rules is prima facie evidence of the validity and the amount of the claim. *See In re Edwards*, 603 B.R. 516, 520 (Bankr. S.D. Fla. 2019); *In re Templeton*, 538 B.R. 578, 582 (Bankr. N.D. Ala. 2015) ("Rule 3001(f) [of the Federal Rules of Bankruptcy Procedure] provides that '[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.'"). A filed proof of claim is "deemed allowed, unless a party in interest…objects." *See* 11 U.S.C. § 502(a); *In re Jaber,* 2019 WL 2066950, at *5 (Bankr. N.D. Ala. May 9, 2019); *see also In re Dove-Nation*, 318 B.R. 147, 152 (B.A.P. 8th Cir. 2004). The burden of proof is on an objecting party to produce evidence "equivalent in probative value to that of the creditor to rebut the prima facie effect of the proof of claim." *In re Winn-Dixie Stores, Inc.*, 418 B.R. 475, 476 (Bankr. M.D. Fla. 2009). The mere act of filing an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by substantial evidence. *See In re McDaniel*, 264 B.R. 531, 533 (B.A.P. 8th Cir. 2001).  Moreover, the failure to abide by the "notice and cure" provision in the Agreement, does not permit assertion of the Trustee's claim.

39.     The Trustee fails to plead sufficient facts to support a finding that Starr's claim is invalid. Starr's claim is based on unpaid consulting fees GP.com was contractually obligated to

22

pay under the SAA in exchange for the Services. Starr's proof of claim is prima facie evidence of its validity, and the Trustee's conclusory assertions on this point are far from the "substantial evidence" necessary to rebut this presumption. In addition, as noted above, the Trustee has not shown that the Transfers were for less than reasonably equivalent value, and thus has not shown that they may be avoided as constructively fraudulent. The Trustee therefore has not plausibly plead that section 502(d) of the Bankruptcy Code requires the disallowance of Starr's claim. GP.com accepted the services under a contract calling for payments to Starr. If GP.com was dissatisfied with the services it bargained for a contractual remedy to provide written notice to Starr and permit Starr to cure. Having not done so, it cannot challenge the payments.

40.     Similarly, the Trustee alleges, without support, that Starr may be an "insider" of GP.com. The Trustee pleads no facts showing that Starr is an "insider" of GP.com. Starr was neither a director, officer nor a "person in control" of GP.com, or in any other position that would make Starr an "insider." *See* 11 U.S.C. § 101(31) (definition of "insider"). The Contract itself describes the relationship of the parties and describes Starr and an independent contractor (Agreement Section 5). The Trustee's failure to plead any facts at all, much less "substantial evidence" in support of its claim objection, is sufficient to warrant dismissal of Count IV.

## CONCLUSION

As discussed in detail above, the Complaint is fraught with the lack of sufficient detail or facts to underlie the various claims. The Complaint wholly fails to plead any facts that plausibly state a claim against Starr, it does not plead that GP.com met the condition precedent of "notice and cure," it is barred by the "independent tort" doctrine, and it must be dismissed for the reasons outlined above.

[*Signature Page Follows*]

23

Dated: September 30, 2019                    Respectfully submitted,


                                            By: /s/ *Marty Steinberg*

                                            **HOGAN LOVELLS US LLP**

                                            Marty Steinberg, Esq.
                                            Florida Bar No.: 187293
                                            Allen P. Pegg, Esq.
                                            Florida Bar No.: 597821
                                            600 Brickell Avenue, Suite 2700
                                            Miami, FL 33131
                                            Telephone: (305) 459-6500
                                            marty.steinberg@hoganlovells.com
                                            allen.pegg@hoganlovells.com

                                            - and -

                                            Sean A. Feener, Esq.
                                            *Pro Hac Vice* Admission
                                            390 Madison Avenue
                                            New York, NY 10017
                                            Telephone: (212) 918-3000
                                            sean.feener@hoganlovells.com

24

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on September 30, 2019, I electronically filed the foregoing Motion with the Clerk of Court by using the Court's CM/ECF system thereby serving all registered users in this case.

By: <u>/s/ *Marty Steinberg*</u>