TAGGED OPINION



**ORDERED in the Southern District of Florida on April 10, 2020.**

Laurel M. Isicoff
Chief United States Bankruptcy Judge

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### www.flsb.uscourts.gov

In re:

GRANDPARENTS.COM, INC., *et al.*,[1]

       Debtors.

_____/

JOSHUA RIZACK, as Liquidating Trustee,

       Plaintiff,

v.

STARR INDEMNITY & LIABILITY
COMPANY,

       Defendant.

_____/

Chapter 11 Cases

Case No. 17-14711-LMI
(Jointly Administered)

Adv. Case No.: 19-01289-LMI

### ORDER GRANTING IN PART AND DENYING IN PART
### STARR INDEMNITY & LIABILITY COMPANY'S MOTION TO DISMISS

---

[1] The Debtors in these jointly administered cases are (i) Grandparents.com Inc., and (ii) Grand Card LLC (Case No. 17-14704-LMI), which are jointly referred to herein as the "Debtor".

THIS CAUSE came before the Court for a hearing on November 20, 2019, upon the Motion to Dismiss Adversary Complaint ("Motion to Dismiss") filed by Defendant Starr Indemnity & Liability Company's ("Starr" or "Defendant")[2]; the Response filed by Plaintiff Joshua Rizack, as Liquidating Trustee ("Trustee" or "Plaintiff")[3]; and the Defendant's Reply[4].

After reviewing the referenced pleadings, the supplemental authority filed by the parties[5], having heard the argument of counsel, considering the record and for the reasons set forth below, the Court denies in part and grants in part the Motion to Dismiss.

## I.    Jurisdiction and Venue

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157(b) and 1334(b), and Administrative Order 2012-25 of the United States District Court, Southern District of Florida.  Additionally, this Court has jurisdiction over this action pursuant to Sections 11.1 and 12.1(b) of the *First Amended Joint Plan of Liquidation* (the "Plan") (ECF #183) and Paragraph 26(ii)

---

[2] *Starr Indemnity & Liability Company's Motion To Dismiss Adversary Complaint Filed By Liquidating Trustee Joshua Rizack* (ECF #20).

[3] *Liquidating Trustee's Response To Starr Indemnity & Liability Company's Motion To Dismiss* (ECF #23).

[4] *Starr Indemnity & Liability Company's Reply In Further Support Of Its Motion To Dismiss Adversary Complaint* (ECF #29).

[5] *Liquidating Trustee's Notice Of Supplemental Authority In Further Support Of His Response (DE 23) To Starr Indemnity & Liability Company's Motion To Dismiss (DE 20)* (ECF #38); *Starr Indemnity & Liability Company's Notice Of Supplemental Authority* (ECF #39); *Starr Indemnity & Liability Company's Second Notice Of Supplemental Authority* (ECF #41); and *Liquidating Trustee's Amended Second Notice Of Supplemental Authority In Further Support Of His Response (DE 23)To Starr Indemnity & Liability Company's Motion To Dismiss (DE 20)* (ECF #48).

of the *Order Confirming the Debtor's First Amended Chapter 11 Plan of Liquidation*

(the "Confirmation Order") (ECF #228) entered on September 20, 2019.

The Court is authorized to hear and enter final orders in this matter pursuant

to 28 U.S.C. § 157(b)(2)(F), (H) and (O).

Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409(a).

## II.    <u>Factual Allegations</u>

The Plaintiff filed his four count Complaint (ECF #1) on July 31, 2019. Count

I seeks to avoid an allegedly fraudulent transfer pursuant to

11 U.S.C. §548(a)(1)(B)[6] and 726.106(1)[7]; Count II seeks to avoid an allegedly

fraudulent transfer pursuant to 11 U.S.C. §544[8] and Fla. Stat. §726.106(1);

---

[6] "(a)  The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business." 11 U.S.C. §548(a)(1)(B).

[7] "(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Fla. Stat. §726.106(1).

[8] "(a)  The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; (2) a creditor that extends credit to the debtor at the time of the commencement

Count III seeks to recover property transferred or the value of such property pursuant to 11 U.S.C. §550[9] and Fla Stat. §§726.108[10] and 726.109[11]; and Count IV Objects to Defendant's Claim.

The Complaint alleges that Starr and Debtor entered into a Strategic Alliance Agreement ("SAA") on January 8, 2013[12]. Pursuant to the SAA, Starr was

---

of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
(b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title..." 11 U.S.C. §544.

[9] "(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from— (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. §550(a).

[10] "(1) In an action for relief against a transfer or obligation under ss. 726.101-726.112, a creditor, subject to the limitations in s. 726.109 may obtain: (a) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim; (b) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with applicable law; (c) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure: 1. An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property; 2. Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or 3. Any other relief the circumstances may require.
(2) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds." Fla. Stat. §726.108

[11] "(2) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under s. 726.108(1)(a), the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (3), or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against: (a) The first transferee of the asset or the person for whose benefit the transfer was made; or (b) Any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee." Fla. Stat. §726.109(2).

[12] As amended on March 28, 2013.

required to provide various consulting services to Debtor. The Complaint alleges that these services included helping Grandparents.com with: (i) development of a strategic business model and investment relationships; (ii) development of a comprehensive business plan; (iii) negotiation of favorable agreements with insurance carriers; (iv) development of insurance products specifically targeted to Debtor's target customer demographic; and (v) exploring the potential of Debtor forming a joint insurance carrier. These services were to be provided by specified members of Starr senior management.

The Complaint further alleges that, in exchange for these services, the Debtor agreed to pay Starr $80,000 a month plus a consulting fee if certain benchmarks were met. In addition to the monetary payments, Starr also received a five year stock warrant to purchase common shares of stock in Grandparents.com equal to 25% of the outstanding equity of Grandparents.com. The Complaint alleges that Debtor paid Defendant, in addition to the warrants, a total of $2,160,000.00 within four years of the Petition Date (the "Payments"). The Complaint states that the Debtor was insolvent or inadequately capitalized at the time these transfers occurred. The Complaint further alleges that the Debtor's liabilities exceeded its assets each year, from 2013 through 2016, referencing the Debtor's financial records, 10-K tax filings, and stating precise amounts of liabilities for each year (in excess of $1,750,000 for each year from 2014-2016).

The Complaint alleges that the Debtor did not receive reasonably equivalent value for these payments, because the staffing on the Debtor's account was

reduced from four individuals to one individual who was not part of Starr's senior management;  that Starr did not provide the requisite level of service; and that the value of the services actually provided by Starr were less than contemplated in the SAA and were less than the reasonably equivalent value of the dollars paid by the Debtor for those services. The operative documents upon which the Plaintiff relies are the SAA and its First Amendment.[13]

The Defendant filed its Motion to Dismiss on September 30, 2019.  Starr asserts that the Complaint should be dismissed pursuant to Fed.R.Civ.P. 8(a) and Fed.R.Civ.P. 12(b)(6)[14] because the Complaint fails to adequately plead the relief to which the Plaintiff claims he is entitled.  For the reasons set forth below, the Court grants the Motion to Dismiss Count II of the Complaint, and denies the Motion to Dismiss Counts I, III and IV of the Complaint.

### III.   Conclusions of Law

#### A.  Legal Standard

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the

---

[13] Exhibits A and B to the Complaint.

[14] Fed.R.Civ.P. 8 is made applicable to this adversary proceeding pursuant to Fed.R.Bankr.P. 7008 and Fed.R.Civ.P. 12(b)(6) is made applicable to this proceeding through Fed.R.Bankr.P. 7012.

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (internal citations omitted).

To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." *Id. at* 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept the plaintiff's factual allegations as true. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). "The scope of review on a motion to dismiss under Rule 12(b)(6) is limited to the four corners of the complaint." *Bencomo Enterprises v. United Specialty Ins. Co.*, 345 F. Supp. 3d 1401, 1404 (S.D.Fla. 2018).

## B.  Legal Analysis

### Existence of a contract does not bar a claim for constructive fraud

The Defendant argues that the Plaintiff's constructive fraud case is just a breach of contract claim in disguise, and that, because the Debtor never gave Starr notice and an opportunity to cure any alleged contract default, the claim

is barred.  Moreover, the Defendant argues, a breach of contract claim can never give rise to a fraudulent conveyance claim because all of the money paid by the Debtor was paid pursuant to a valid contract and payment under a contract always constitutes reasonably equivalent value  - the payment is made pursuant to a bargained for exchange.  Thus, the Defendant argues, unless the contract *itself* is set aside as a fraudulent transfer (relief not sought and timebarred by the Plaintiff in this adversary proceeding), payments under the contract cannot be avoided as constructively or actually fraudulent.

The existence of a binding contract does not foreclose a fraudulent conveyance claim if the elements of the cause of action for constructive fraud are met. "A transfer may be fraudulent even if it is made in accordance with the terms of a contract."  *EBC I, Inc. v. America Online, Inc. (In re EBCI I Inc.)*, 356 B.R. 631, 640 (Bankr.D.Del. 2006). *See also United States v. S. Capital Construction Inc.*, 758 Fed. Appx. 676, 679 (11th Cir. 2018)( affirming trial court's finding that a spouse, who was labelled president, CEO, and director of an entity, received actual and constructive fraudulent transfers more than $650,000 where the spouse had little entity involvement and provided no services for the payments); *Mellon Bank, N.A. v. Official Comm. Of Unsecured Creditors of R.M.L. (In re R.M.L.)*, 92 F.3d 139, 147-48 (3rd Cir. 1996)(court upheld lower court judgment that payment for a loan commitment letter was recoverable as a fraudulent conveyance. "Because the commitment letter was so conditional that the chances of the loan closing were minimal, we agree that [the debtor] did not

receive value that was reasonably equivalent to the fees it paid Mellon Bank.").

**A transfer made under the terms of a contract is not always for "reasonably equivalent value"**

A transfer made pursuant to a contract may still be avoidable as a fraudulent transfer if the evidence demonstrates the exchange is not for reasonably equivalent value. Despite the Defendant's arguments to the contrary, whether a transfer is made pursuant to the terms of a contract is not necessarily dispositive of the issue.  If that were the case then any payment that is otherwise constructively or actually fraudulent would be insulated by the existence of a contract. *See Kipperman v. Onex Corp.*, 411 B.R. 805, 853 (N.D. Ga. 2009)(In an order denying defendants' motion for summary judgment the district court ruled that whether the defendants provided reasonably equivalent value to the debtor with respect to payments made for services to be provided under the terms of a management agreement created material issues of fact; the trustee plaintiff was not barred as a matter of law from bringing the claim.) *See also Mellon Bank, N.A. V. Committee*, 92 F.3d at 142; *EBC 1, Inc. v. Am. Online, Inc. (In re EBC 1, Inc.)*, 356 BR. at 638 ("[T]here is nothing in section 548 to suggest that executory contracts or terminated contracts are not subject to its provisions.").

The Court recognizes that the definition of value in section 548(d)(2) includes "satisfaction or securing of a present or antecedent debt of the debtor", and that this definition has led many courts to hold that "the satisfaction or partial satisfaction of a debt constitutes reasonably equivalent value for purposes of determining whether a transfer was constructively fraudulent." *In re Villamont-*

*Oxford Assoc. Ltd. P'ship*, 236 B.R. 467, 481 (Bankr.M.D.Fla. 1999). *See Cox v. Nostaw, Inc. (In re Central Illinois Energy Cooperative)*, 526 B.R. 786, 791 (Bankr.C.D.Ill. 2015)(The payment of obligations under a contract discharge the obligation under the contract and therefore "are, by definition, for reasonably equivalent value."). However, the Court does not find these two concepts mutually exclusive. In general, satisfaction of a contract obligation in accordance with the terms of the contract will constitute reasonably equivalent value.  But just like payment for services under a contract do not always bar a claim for breach of contract, neither does it necessarily bar a claim for constructive fraud, *if* the plaintiff proves the elements of *that* cause of action.  And based on the case law that is discussed in this opinion, the payment of a contract obligation under a contract does not, as a matter of law, bar a claim for constructive fraud.[15]

Because the existence of a contract does not preclude a claim for constructive fraud the various defenses raised in the Motion to Dismiss to enforcement of the contract[16] are not applicable.  The only defenses that are relevant are those relating to the statutory claims.

**A constructive fraud claim is not barred by the independent tort rule**

The Defendant also argues that constructive fraud is essesntially a tort, and therefore, under the independent tort doctrine, or the economic loss rule the

---

[15] To the extent that there is a split in the case law on this issue, the Court finds that those cases recognizing the possibility of a fraudulent conveyance claim notwithstanding an enforceable contract to be the better reasoned.

[16] These include failure to provide notice and an opportunity to cure and acceptance of services.

10

Plaintiff is barred from seeking redress outside of a breach of contract claim.

The claims raised are not barred by the independent tort rule. The independent tort rule requires that " in order to bring a valid tort claim, a party still must demonstrate that all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim." *Tiara Condominium Association, Inc.,* 110 So.3d 399, 408 (Fla. 2013)(Pariente concurrence)(citing *Lewis v. Guthartz*, 428 So.2d 222, 224 (Fla. 1982).[17],[18]

First, statutory claims are not tort claims. *Accord Citizens Property Ins. Corp. v. Perdido Sun Condominimium Ass'n, Inc.,* 164 So.3d 663 (Fla. 2015)(statutory bad faith action is not a tort);[19] *Brown v. Nova Info. Sys., Inc.*, 903 So. 2d 968, 969 (Fla. 5th DCA. 2005)(conspiracy to violate Florida's Uniform Fraudulent Transfer Act is not a tort giving rise to jurisdiction under the long arm statute.)

Second, even if statutory fraud claims were tort claims, the statutory elements of the claims are distinct from the elements for breach of contract. *See Cohen v.*

---

[17] The parties conflate the independent tort rule with the economic loss rule. The economic loss rule is "a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Tiara Condominium* at 402. However, in Florida, the economic loss rule only applies in the products liability context. *Id* at 407.

[18] An example would be fraud in the inducement, *see, e.g., HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238 (Fla.1996), or negligent misrepresentation, *see, e.g., U.S. Fire Insurance Co. v. ADT Security Services, Inc.*, 134 So.3d 477 (Fla. 2d DCA 2013).

[19] Even prior to limitation of the economic loss rule to products liability actions, the Florida Supreme Court made clear that statutory causes of action are never barred by the economic loss rule. *Comptech Int'l, Inc. v. Milam Commerce Park, Ltd.,* 753 So.2d 1219 (Fla. 1999); *Invo Florida v. Somerset Venturer, Inc.*, 751 So.2d 1263 (Fla. 3d DCA 2000).

11

*Ernst & Young, LLP (In re Friedman's Inc.)*, 327 B.R. 530, 546-47 (Bankr.S.D.Ga. 2007)(The mere "fact that a fraudulent conveyance claim may arise out of a common set of facts in which the elements of a breach of contract claim might also exist does not prevent the Trustee from pleading both claims in his complaint." . . . "the facts arguably support both a breach of contract action and a fraudulent conveyance action."*Id.*).  That the same operative facts may give rise to more than one cause of action does not preclude a plaintiff seeking relief under more than one theory. *See Sun Life Assurance Company of Canada v. Imperial Premium Finance, LLC*, 904 F.3d 1197, n. 16 (11th Cir. 2018); *see also* Fed.R.Civ.P. 8(a)(3) and 18(a) as incorporated by Fed.R.Bankr.P. 7008 and 7018, respectively.

### A triggering creditor must be specifically identified

The Defendant argues that the Plaintiff is not entitled to relief under Count II of the Complaint because the Defendant has failed to identify a triggering creditor.  The Defendant is correct that, if the relief the Plaintiff seeks requires a triggering creditor, the Plaintiff has not met the requirements of Rule 12.[20]

The Complaint alleges that "Grandparents.com's liabilities exceeded its assets every year as follows…" and included specific references to the assets and liabilities of the Plaintiff for the years stretching from 2013-2016. The Complaint

---

[20] The Complaint does not specify under which section of 544 the Plaintiff is seeking relief. Section 544(a) does not require a triggering creditor, because, as the statute specifically states, the trustee steps into the shoes of a creditor "whether or not such a creditor exists." 11 U.S.C. §§544(a)(1) and (a)(2).  However, based on the context of the Complaint and the arguments, the Court believes the Plaintiff is proceeding under section 544(b).

further alleges that during each of the years relevant to the allegations in the Complaint, the Debtor's liabilities exceeded its assets, the precise amounts of the liabilities, and that the liabilities are taken from Debtor's financial records, including its 10-K tax filings.  Thus, the Plaintiff argues, the Court is able to draw the reasonable inference that there existed at least one creditor, because – by definition – liabilities equal creditors, and thus by alleging the factual existence and reporting of such liabilities the Trustee has alleged the existence of creditors.

That is all true.  However,

> [w]hile a number of courts previously ruled that it was not necessary to name specific triggering creditors, in light of the Supreme Court's rulings in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), it is now necessary to include specific allegations to support this element of the claim. The plaintiff must name a specific [triggering] creditor or creditors. It is not sufficient to merely draw the Court's attention to the schedules of liabilities filed in a case, particularly if this is done only in connection with a motion to dismiss and not in the complaint itself.

*Furr v. TD Bank, et al. (In re Rollaguard Security, LLC),* 570 B.R. 859, n.11 (Bankr.S.D.Fla. 2017). *See also Baskt v. Bank Luemi, USA (In re D.I.T., Inc.),* 561 B.R. 793, 800 (Bankr.S.D.Fla. 2016)(finding that the complaint adequately identified triggering creditors, "Plaintiff identifies by name several creditors with allowable unsecured claims who could have sought avoidance of the transfers to [the bank]"); *Andrews v. Graham Holding Company, Inc., et al. (In re Graham Gulf, Inc.),* 2018 WL 10345330, *5 (Bankr.S.D.Ala. 2018)(explaining the requirement that a "specific

13

triggering creditor [must be] identified for each alleged transfer") (internal citations omitted).

**Count III: Recovery Pursuant to 11 U.S.C. §550 and Fla. Stat §§726.108 and 726.109**

The Defendant seeks dismissal of Count III of the Complaint, on the basis that the Trustee has neither adequately plead a lack of reasonably equivalent value and nor shown the avoidability of the Transfers. Because the Court has not dismissed Count I of the Complaint, Count III is not dismissed.

**Count IV: Objection to Defendant's Proof of Claim**

11 U.S.C. §502(d) explicitly states "the court shall disallow any claim of any entity from which property is recoverable [for an avoidance action]". *Id.* Because the Court has not dismissed Count I, the Objection to Claim is not subject to dismissal at this juncture. However, the objection to claim also alleges that "due to its holdings and involvement with Grandparents.com, Starr may be considered an insider of Grandparents.com". Other than this one statement, the Complaint does not state why the Defendant would be considered an insider of the Debtor, and the Plaintiff has not cited any legal or factual support for this statement. Accordingly, any objection to claim based on the Defendant's alleged insider status is stricken.

## IV.    <u>Conclusion</u>

In conclusion, the Trustee has plead sufficient facts to withstand the Defendant's Motion to Dismiss with respect to Count I of the Complaint, and therefore the Motion is DENIED with respect to Counts I, III and IV. However,

the Trustee has failed to plead sufficient facts with respect to Count II of the Complaint and therefore the Motion to Dismiss is GRANTED with respect to Count II of the Complaint.[21]

The Plaintiff will have fourteen days to file an Amended Complaint that specifically identifies the triggering creditors upon which Plaintiff is relying in support of the relief sought with respect to Count II of the Complaint. No other amendments are permitted. If the Plaintiff does not file an Amended Complaint as to Count II then the Defendant shall file an answer within thirty (30) days of the date of this Order.

If the Plaintiff files an Amended Complaint with respect to Count II then the Defendant shall have twenty-one (21) days from the date the Amended Complaint is filed to file an answer to the Amended Complaint.

# # #

Copies furnished to:
Marty Steinberg, Esq.

*Attorney Steinberg shall serve a copy of this Order on all interested parties and file a certicate of service.*

---

[21] This opinion is limited to the quality of the pleading for purposes of withstanding the Motion to Dismiss.

15